# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 22, 2012

## STATE OF TENNESSEE v. RODNEY DEWAYNE HYMES, alias RODNEY DEWAYNE HYNES

**Appeal from the Criminal Court for Hamilton County**
**Nos. 261300, 261301, 267502, 272102, 275731, 275815, 277058, 279610**
**Barry A. Steelman, Judge**

**No. E2012-00454-CCA-R3-CD - Filed October 18, 2012**

The defendant, Rodney Dewayne Hymes, alias Rodney Dewayne Hynes, appeals the Hamilton County Criminal Court's revocation of his probation and reinstatement of his original sentences in the Department of Correction for his 2007 and 2008 convictions for violation of the Habitual Motor Vehicle Offender ("HMVO") Act. The defendant also challenges the trial court's sentencing determinations in five new cases, arguing that the trial court abused its discretion by failing to give sufficient weight to his potential and amenability for rehabilitation. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JEFFREY S. BIVINS, J., joined.

Ardena J. Garth, District Public Defender; Richard Kenneth Mabee (on appeal) and Mary Ann Green (at trial), Assistant Public Defenders, for the appellant, Rodney Dewayne Hymes, alias Rodney Dewayne Hynes.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; William H. Cox, III, District Attorney General; and Bret Alexander, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This case relates to the defendant's violation of probation in three cases and his

sentencing for five new offenses he committed while on probation or some other form of release on the first three cases. On April 25, 2007, the defendant pled guilty in the Hamilton County Criminal Court in case numbers 261300 and 261301 to two counts of violation of the HMVO Act, committed on July 12 and July 7, 2006, respectively. He was sentenced for those offenses to consecutive terms of two years, suspended to community corrections. In November 2007 and again in February 2008, revocation warrants were issued based on the defendant's alleged failure to comply with the conditions of his community corrections sentences, including his having violated curfew, having absconded from the program, and having been arrested for driving on a revoked license and for theft of property over $1000.

On March 5, 2008, the Hamilton County Grand Jury indicted the defendant in case number 267502 for driving on a revoked license, violation of the financial responsibility law, and another violation of the HMVO Act based on an offense date of November 17, 2007. On July 28, 2008, the defendant pled guilty to violation of the HMVO Act in exchange for dismissal of the other counts of the indictment and a two-year sentence on unsupervised probation, to be served consecutively to the sentences in case numbers 261300 and 261301. That same day, the trial court revoked the defendant's community corrections sentences in case numbers 261300 and 261301 and reinstated him to unsupervised probation.

On June 3, 2009, the Hamilton County Grand Jury indicted the defendant in case number 272102 for another violation of the HMVO Act, reckless driving, and violation of the financial responsibility law based on an offense date of January 10, 2009. On June 12, 2009, a further revocation warrant was issued in case numbers 261300, 261301, and 267502 based on the defendant's above charges.

On April 7, 2010, the Hamilton County Grand Jury indicted the defendant in case number 275731 on another count of violation of the HMVO Act and violation of a traffic control device based on an offense date of January 28, 2010. On April 14, 2010, the Hamilton County Grand Jury indicted the defendant in case number 275815 with yet another violation of the HMVO Act, violation of the financial responsibility law, and speeding, based on the same offense date of January 28, 2010.

On April 17, 2010, the defendant was arrested in case number 277058 for attempted possession of cocaine for resale. Less than six months later, he was arrested in case number 279610 on a new charge of attempted possession of cocaine for resale. On August 17, 2011, the defendant pled guilty as a Range I offender in the five new cases, 272102, 275731, 275815, 277058, and 279610 to a total of three counts of violation of the HMVO Act and two counts of attempted possession of cocaine for resale in exchange for dismissal of the remaining counts of the indictments and the dismissal of other indictments. Pursuant to the guilty plea agreement, sentencing in the five cases was left to the trial court's later

determination. Defense counsel acknowledged at that hearing that each of the defendant's offenses had been committed while he was on bond for a previous offense, which made consecutive sentencing in those cases mandatory.

At the conclusion of the guilty plea hearing, the trial court granted the defendant's request to be allowed to enter the "House of Refuge," a residential rehabilitation program, pending sentencing in the case. The trial court therefore released the defendant on his own recognizance in the new cases and on a furlough order in the probation violation cases. In so doing, the court noted that the defendant's ability to comply with the House of Refuge program during the interim before sentencing would give the court additional insight into his potential for rehabilitation. On November 4, 2011, the State filed a motion to revoke the defendant's own recognizance bonds on the basis that the defendant had violated several internal rules of the House of Refuge and had absconded from the program. Thereafter, on November 11, 2011, the trial court issued a capias for the defendant's arrest.

At the February 6, 2012 sentencing hearing, Board of Probation and Parole Officer Bryan Johnson identified the defendant's presentence report, which was admitted as an exhibit. Officer Johnson testified that the defendant had a total of thirty-nine felony and misdemeanor convictions in his criminal history as well as fifteen different suspended sentences, which included a number of revocations. On cross-examination, he acknowledged that there were some cases in which the defendant had received suspended sentences and had not been revoked. He pointed out, however, that in several of those cases, the defendant had picked up new charges before the suspended sentences would have expired.

George Thrash, the acting director of the House of Refuge, testified that the defendant was dismissed from the program and taken back into custody on November 7, 2011, after having twice violated the rule against having a cell phone. He showed the court a copy of the house rules, signed by the defendant, on which the first rule was listed as no cell phone possession. He also testified that the defendant was thoroughly instructed on the rule at the time he entered the program. He stated that on the first occasion when the defendant was found with a cell phone, on September 28, he was warned and placed on probation in the program. When the defendant was again found with a cell phone on November 4, he was dismissed from the program. On cross-examination, Thrash acknowledged that the defendant and other residents of the program had complained to him that the houseman often kept the house phone, which the residents used to arrange work, locked in his own room.

Reverend Craig Paul testified that he was a pastor in the United Methodist Church and worked with the "Transformation Project," an anger management program in the Hamilton County Jail. He said that his records reflected that the defendant had faithfully completed three or four of the nine classes of the program. Should the defendant be released from

incarceration, he would be able to continue with the Transformation Project, which would involve his attending classes on Monday nights, participating in community fellowship on Thursday nights, and reporting to a "life coach" by telephone five nights a week.

Lakisha Vinson, the defendant's fiancée, testified that the defendant, before his incarceration, supported a household consisting of the defendant, herself, and the defendant's eight and twelve-year-old daughters by working at, variously, "Griffith's Enterprise," "Chicken House," and the "Electric Power Board." She said that the defendant's two daughters were the center of his universe and that his desire to stay in contact with them was the reason he had the cell phone in the House of Refuge. She said that the defendant could once again live with her and his daughters in her home if he were released on probation and that she knew of individuals who had volunteered to provide transportation for him. On cross-examination, Vinson acknowledged that the defendant was living with her and his two daughters at the time he committed the offenses of attempting to sell cocaine.

In an allocution, the defendant explained to the court that he violated the no cell phone rule of the House of Refuge because his complaints about his limited access to the house phone were ignored. He also complained that the House of Refuge had not lived up to his expectations. He vowed that he was a different person from the one who had "clogg[ed] up" the court's docket over the years "with all this foolishness," and that, if the court allowed him to get some help through the Transformation Project, it would never again see him in the courtroom on another charge.

The defendant also submitted a letter from his most recent employer praising the defendant's job performance and potential for probation and letters from two different individuals who had volunteered to provide him with necessary transportation.

At the conclusion of the hearing, the trial court issued lengthy and thorough oral sentencing findings in which it detailed, among other things, the defendant's numerous failed attempts to complete different sentences involving alternatives to incarceration. The trial court found that the defendant had violated the terms of his furlough in case numbers 261300, 261301, and 267502 and ordered that he serve his sentences in the Department of Correction. With respect to the five new cases, the trial court found that mitigating factor (1), that the defendant's conduct neither caused nor threatened serious bodily injury, applied to the driving cases and that mitigating factor (7), that the defendant was motivated by a desire to provide for his family, applied to the cocaine cases. See Tenn. Code Ann. § 40-35-113(1), (7) (2010). The trial court found that enhancement factors (1), (8), and (13), that the defendant had a history of criminal convictions or criminal behavior in addition to that necessary to establish his range, that the defendant had failed to comply with a sentence involving release into the community, and that the defendant was released on probation at

-4-

the time of the offenses, applied to all the offenses.  See id. § 40-35-114(1), (8), (13).

Finding that the defendant was not a suitable candidate for probation or other alternative sentencing, the trial court sentenced him to serve three consecutive two-year sentences for the driving offenses, to be served consecutively to case numbers 261300, 261301, and 267502.  The court sentenced the defendant to three years for each of the cocaine convictions, to be served consecutively to each other and consecutively to the other sentences.  The court ordered, however, that the attempted possession of cocaine sentences could be served on probation.

## ANALYSIS

The defendant contends that the trial court abused its discretion by fully revoking his probation in his old cases and by not granting probation in his new cases, arguing that the court should have "put more weight on his willingness to be rehabilitated."  In support, he cites his "plans to enter the Tranformation Project," as well as his supportive family, expressed remorse, and potential for gainful employment.  The State argues that the trial court acted within its discretion in revoking the defendant's probation and ordering that he serve his sentences for his new cases in the Department of Correction.  We agree with the State.

### A.  Revocation of Probation

The defendant first argues that the trial court abused its discretion by ordering a full revocation of his probation in his 2007 and 2008 violation of the HMVO Act cases.  A trial court, however, is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence.  Tenn. Code Ann. §§ 40-35-310, -311 (2010).  The revocation of probation lies within the sound discretion of the trial court.  State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).  To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'"  State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).

We conclude that the trial court did not abuse its discretion by fully revoking the defendant's probation in case numbers 261300, 261301, and 267502 and reinstating the original sentences in the Department of Correction.  The record reveals that the defendant

was given multiple opportunities to serve these sentences on probation or some other form of alternative release, yet he continued to violate the conditions of his release by committing new criminal offenses and failing to abide by the rules of his various treatment programs. We, therefore, affirm the trial court's sentencing determinations in these cases.

## B. Denial of Probation

The defendant also argues that the trial court abused its discretion by sentencing him to the Department of Correction in his new cases rather than granting him probation.

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2010).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise , __ S.W.3d __, 2012 WL 4380564, at *16 (Tenn. Sept. 26, 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper

application of the purposes and principles of our Sentencing Act." Id. at *17.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

In denying the defendant's request for probation and ordering that he serve his sentences in the Department of Correction, the trial court appropriately considered the above sentencing principles as well as all the relevant facts and circumstances, which included the defendant's lengthy criminal history, his numerous failed attempts at sentences involving release, his repeated violations of the law, and his attitude before the court. We discern no error in the trial court's sentencing determinations in these cases. Accordingly, we affirm the trial court's denial of probation or other alternative sentencing.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the trial court's full revocation of the defendant's probation in case numbers 261300, 261301, and 267502 and its sentencing determinations in case numbers 272102, 275731, 275815, 277058, and 279610.

_____
ALAN E. GLENN, JUDGE